1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9  Dwayne E. McIntosh, a single man,      )    No. CV-07-0760-PHX-DGC
                                          )
10              Plaintiff,                )    **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Maricopa Community College District;  )
13  Judy Taussig and John Doe Taussig, wife)
    and husband; Jack Clevenger and Jane  )
14  Doe Clevenger, husband and wife; Larry )
    Christensen and Jane Doe Christensen,  )
15  husband and wife; Spencer Peterson and )
    Jane Doe Peterson, husband and wife;   )
16  John and Jane Does I-X; Black          )
    Corporations I-X; White Partnerships I-)
17  X,                                     )
                                          )
18              Defendants.               )
                                          )
19  _____

20          On April 9, 2007, Plaintiff filed a complaint alleging numerous violations on the part

21  of his employer, of which only claims arising out of Title VII, 42 U.S.C. § 1981, and

22  42 U.S.C. § 1983 remain. Dkt. #1. Defendants Maricopa Community College District, Judy

23  and Thomas Taussig, Jack and Diane Clevenger, Spencer and Gina Petersen, Larry

24  Christiansen, and Pat Honzay have filed a motion for summary judgment. Dkt. #47. Plaintiff

25  filed a response and Defendants replied. Dkt. ## 49, 53. The Court held oral argument on

26  February 12, 2009. For the reasons that follow, the Court will grant in part and deny in part

27  the motion for summary judgment.

28

1   **I.      Background.**

2       Plaintiff is an African-American man who has been employed with the Maricopa

3   Community College District since 1996.  Plaintiff originally worked as a program advisor

4   in the Disability Resources and Services (DRS) office at Mesa Community College (MCC).

5   In 2001, Plaintiff became a Student Services Enrollment Specialist at the Red Mountain

6   Campus of MCC, where he is currently employed.  In February of 2006, MCC posted a job

7   opening for the Manager of the DRS office. Dkt. #47-4 at 3.  The job posting listed three

8   minimum qualifications: (1) experience in supervision and management of an office serving

9   students with disabilities, (2) knowledge of federal laws on access and accommodation for

10  persons with disabilities, and (3) experience in academic advisement.  *Id.*  Plaintiff applied

11  for the position, but was not granted an interview.  Defendants maintain that Plaintiff was

12  denied an interview because he was not qualified for the position.  Plaintiff contends that he

13  was qualified for the position and was denied an interview on the basis of his race.

14  **II.     Legal Standard.**

15      A party seeking summary judgment "always bears the initial responsibility of

16  informing the district court of the basis for its motion, and identifying those portions of

17  [the record] which it believes demonstrate the absence of a genuine issue of material fact."

18  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is appropriate if the

19  evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no

20  genuine issue as to any material fact and that the movant is entitled to judgment as a matter

21  of law." Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the

22  suit will preclude the entry of summary judgment, and the disputed evidence must be "such

23  that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty

24  Lobby, Inc.*, 477 U.S. 242, 248 (1986).

25  **III.    Plaintiff cannot maintain a Title VII claim against individual employees.**

26      Defendants argue that Plaintiff cannot maintain a Title VII claim against individual

27  employee Defendants.  Plaintiff has not responded to this argument.  Ninth Circuit case law

28  holds that there is no personal liability for employees under Title VII.  *See Miller v.*

1    *Maxwell's Intern. Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993); *Craig v. M & O Agencies, Inc.*,

2    496 F.3d 1047, 1058 (9th Cir. 2007).    Plaintiff's counsel conceded this point at oral

3    argument.    The Court will grant summary judgment in favor of all individual Defendants on

4    Plaintiff's Title VII claim.

5    **IV.    The section 1981 and 1983 claims against Clevenger and Peterson.**

6          Defendants argue that Plaintiff cannot maintain a claim against Defendants Clevenger

7    and Peterson under sections 1981 or 1983 because Plaintiff does not allege that they had any

8    involvement in the DRS manager selection process.    Plaintiff has not responded to this

9    argument.    After reviewing the complaint, the Court is unable to locate any allegations

10   against Defendant Peterson with regard to the DRS manager selection process.  Plaintiff does

11   allege, upon information and belief, that Defendant Clevenger influenced decisions on whom

12   to interview, but Plaintiff has provided no evidence to support that allegation. Dkt. #1 ¶¶ 42-

13   43.  Plaintiff's counsel conceded this point at oral argument.  The Court will grant summary

14   judgment on Plaintiff's section 1981 and 1983 claims against both Defendants.

15   **V.    Plaintiff has established a prima facie case of discrimination.**

16         The criteria set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

17   govern Plaintiff's Title VII claim and provide a guide to Plaintiff's claims under sections

18   1981 and 1983.  *Tagupa v. Bd. of Directors*, 633 F.2d 1309, 1312 (9th Cir. 1980); *see also*

19   *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754-55 (9th Cir. 2001)

20   (affirming summary judgment for defendants upon an application of the Title VII burden-

21   shifting framework to a section 1983 claim); *Fonseca v. Sysco Food Services of Arizona,*

22   *Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Analysis of an employment discrimination claim

23   under [section] 1981 follows the same legal principles as those applicable in a Title VII

24   disparate treatment case.") (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir.

25   2003)).    Under Title VII, an employer may not "discriminate against any individual with

26   respect to his compensation, terms, conditions, or privileges of employment, because of such

27   individual's race[.]"  42 U.S.C. § 2000e-2(a).  Plaintiff carries the initial burden to establish

28   a prima facie case of race discrimination by showing: "(i) that he belongs to a racial minority;

1    (ii) that he applied and was qualified for a job for which the employer was seeking

2    applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his

3    rejection, the position remained open and the employer continued to seek applicants from

4    persons of complainant's qualifications."   *McDonnell Douglas*, 411 U.S. at 802.

5         Defendants contend that Plaintiff has not established a prima facie case because

6    Plaintiff was not qualified for the DRS manager position.  Specifically, Defendants contend

7    that Plaintiff lacked experience in the supervision and management of an office serving

8    students with disabilities.  Plaintiff has testified that he met this qualification for two reasons.

9    First, Plaintiff stated on his job application that he was a program supervisor at Arizona

10   Youth Associates (AYA) where he directed the daily care of adolescent male sex offenders

11   and handled all managerial functions.  Dkt. #47-3 at 14; Dkt. # 47-4 at 7.  Plaintiff contends

12   that these adolescents were high school students and that sex offenders are classified as

13   persons with disabilities.  Dkt. #47-3 at 14.   Second, Plaintiff asserts that he met this

14   qualification while working as a program advisor at the MCC DRS office because he

15   managed the office when the manager was not there.  Dkt. #47-4 at 51; Dkt. # 47-3 at 6-7.

16        "[U]nder the *McDonnell Douglas* framework, 'the requisite degree of proof necessary

17   to establish a prima facie case for Title VII on summary judgment is minimal and does not

18   even need to rise to the level of a preponderance of the evidence.'"   *Villiarimo v. Aloha*

19   *Island Air, Inc*., 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26

20   F.3d 885, 889 (9th Cir. 1994)); *see Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th

21   Cir. 1998).  Indeed, "[t]he amount of evidence that must be produced in order to create a

22   prima facie case is 'very little.'"   *Wallis*, 26 F.3d at 889 (citation and internal alterations

23   omitted).  Plaintiff's testimony concerning his management experience, and the fact that his

24   application identified his management work with adolescent sex offenders, is sufficient to

25   satisfy the low threshold required to establish a prima facie case.  Defendants' contention that

26   Plaintiff's duties at AYA were very different than those of the DRS manager at MCC goes

27   to the weight of Plaintiff's assertion, but does not defeat his prima facie case.  It is not

28   disputed that Plaintiff managed the program at AYA and that his application reflected that

1   fact.  The Court finds this evidence sufficient to clear the Ninth Circuit's low threshold for

2   a prima facie case.

3   **VI.     Plaintiff has established a triable issue of fact.**

4          "If the plaintiff establishes a prima facie case, the burden of production – but not

5   persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory

6   reason for the challenged action." *Villiarimo*, 281 F.3d at 1062.  Once the employer fulfills

7   this burden of production, the "presumption of unlawful discrimination 'simply drops out of

8   the picture.'"  *Wallis*, 26 F.3d at 889 (quoting *St. Mary's Honor Ctr.*, 509 U.S. 502, 507

9   (1993)).  "This is true even though there has been no assessment of the credibility of [the

10  employer] at this stage." *Id.* at 892 (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S.

11  248, 254 (1981)).  Defendants assert that Plaintiff was not selected because his application

12  materials did not demonstrate that he met the minimum qualifications for the position and

13  because the person hired was better qualified for the position.  Defendants have sufficiently

14  articulated a legitimate, non-discriminatory reason for not selecting Plaintiff.

15         If the employer sufficiently articulates a nondiscriminatory reason, the plaintiff "must

16  produce evidence in addition to that which was sufficient for [his] prima facie case in order

17  to rebut the [employer's] showing." *Godwin*, 150 F.3d at 1220 (citing *Wallis*, 26 F.3d at

18  890).  "[T]he plaintiff must show that the articulated reason is pretextual 'either directly by

19  persuading the court that a discriminatory reason more likely motivated the employer or

20  indirectly by showing that the employer's proffered explanation is unworthy of credence.'"

21  *Villiarimo*, 281 F.3d at 1062 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124

22  (9th Cir. 2000)); *Burdine*, 450 U.S. at 256.  To establish pretext, Plaintiff asserts that he was

23  the best candidate for the position, that Nina Robinson, a member of the hiring committee

24  who was later removed, states in her affidavit that Plaintiff was the best candidate for the

25  position, and that Robinson also states in her affidavit that there was a racially motivated

26  secret meeting to discuss how not to give Plaintiff an interview.  Robinson directly asserts

27  that she has knowledge "that this process was racially motivated to discriminate against the

28  Plaintiff."  Dkt. #50, Ex. 6.

1    Defendants dispute that Plaintiff was actually qualified for the position, contending

2  that managing high school sex offenders does not constitute experience in supervising and

3  managing an officer serving students with disabilities and that Plaintiff failed to state that he

4  occasionally managed the DRS office in his application materials.  Defendants also contend

5  that Nina Robinson's avowal in her affidavit that Plaintiff was the most qualified candidate

6  is insufficient to create a triable issue of fact because Rule 56(e) requires that affidavits be

7  "made on personal knowledge" and Robinson does not specifically state that the statements

8  in the affidavit are made on personal knowledge, nor does she provide any specific facts

9  about Plaintiff's qualifications.

10    Although this is a close question, the Court concludes that the Robinson affidavit is

11  sufficient to create a triable issue of fact.  "Personal knowledge can be inferred from an

12  affiant's position."  *Self-Realization Fellowship Church v. Ananda Church of Self-*

13  *Realization*, 206 F.3d 1322,1330 (9th Cir. 2000).  Robinson is a manager at MCC, has been

14  employed there for 19 years, and was on the initial hiring committee for the DRS manager

15  position.  Dkt. #53, Ex. 1; Dkt. #50, Ex. 6.  Her personal knowledge can be inferred from her

16  position.  The affidavit asserts that she has knowledge of a secret meeting held to exclude

17  Plaintiff from the hiring process on the basis of his race, and that she has knowledge that the

18  hiring process was racially motivated to discriminate against Plaintiff.  Although the basis

19  for this knowledge is not specified and the affidavit generally lacks factual detail, the Court

20  concludes that an affidavit asserting knowledge of such racial discrimination, by a person

21  who is a long-time employee and manager at MCC and a member of the hiring committee,

22  creates a question of fact that must be resolved by the jury.  Defendants contend that

23  Robinson was eventually removed from the hiring committee and therefore cannot have

24  personal knowledge of her statements. Dkt. #53 at 4.  But Defendants have failed to establish

25  that she was removed from the hiring committee before she had a chance to evaluate

26  Plaintiff's qualifications and acquire the information asserted in her affidavit.

27    Defendants also contend that Robinson's affidavit does not satisfy the requirement

28  that circumstantial evidence be "specific and substantial."  *Villiarimo*, 281 F.3d at 1062;

1   *Godwin*, 150 F.3d at 1222.  The Court concludes, however, that Robinson's testimony is

2   direct evidence of a discriminatory motive, not circumstantial evidence.  Direct evidence is

3   evidence which, if believed, proves discriminatory motive without inference or presumption.

4   *See Godwin*, 150 F.3d at 1221.  "When the plaintiff offers direct evidence of discriminatory

5   motive, a triable issue as to the actual motivation of the employer is created even if the

6   evidence is not substantial."  *Id.*

7         Finally, Defendants argue that the affidavit of Ms. Robinson should be excluded from

8   evidence because it was obtained in violation of ER 4.2 of the Arizona Rules of Professional

9   Conduct.  That rule provides that a lawyer may not communicate about the subject matter of

10   the representation with a party the lawyer knows to be represented by another lawyer, unless

11   the lawyer has the consent of the other lawyer or the communication is authorized by law.

12   Rule 42, Rules of the Supreme Court of Arizona, ER 4.2.  The comment to ER 4.2 explains

13   that this prohibition applies to managerial employees of a party.  *Id.*  Defendants note that

14   Nina Robinson is a manager at MCC.

15         Plaintiff's counsel responded at oral argument by asserting that the Robinson affidavit

16   was obtained by Plaintiff without counsel's knowledge.  Although he acknowledged his

17   responsibility fo the actions of his client, Plaintiff's counsel argued that his client's

18   unknowing violation of ER 4.2 should not result in the exclusion of significant evidence and

19   the granting of summary judgment.

20         Even if the Court assumes that the Robinson affidavit was obtained in violation of ER

21   4.2, the Court concludes that exclusion of the affidavit is not warranted.  Federal courts agree

22   that a district court has discretion in deciding whether to exclude evidence obtained in

23   violation of ethical rules.  These courts have recognized, however, that exclusion is a harsh

24   sanction that should be granted only rarely:

25               An exclusionary policy frustrates truth and does not punish the ethical
             violation, but works against the client who may have been wronged by the

26             opposing party as far as the substantive claim is concerned.  An ethical
             violation ought to be dealt with by sanctions against the errant attorney, except

27             in special cases.

28

*Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 510 (D. Utah 1996); *see also Calloway v. DST Systems, Inc.*, 2000 WL230244, *3 (W.D. Mo. 2000) ("any sanctions would needlessly punish plaintiff for his attorney's misdeeds"); *Plan Committee in the Driggs Reorganization Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998) ("the appropriate remedy for any ethical violation [of Rule 4.2] that occurred would be disciplinary action against [the attorney], not dismissal of the adversary proceeding, suppression of evidence, or disqualification of counsel").

The Court concludes that this is not a case where key evidence should be stricken from the record. Defendants do not contend that the Robinson affidavit was obtained under fraudulent or misleading circumstances. Nor do Defendants contend that they are unable to communicate with Ms. Robinson about the affidavit or obtain contrary evidence. Ms. Robinson is, after all, one of their managers. The Court does not by this statement intend to minimize the importance of ER 4.2 or to approve the conduct that occurred in this case. Lawyers clearly should abide by ER 4.2 and prevent their clients from engaging in an end-run around the rule. But the Court does conclude that any ethical violation that occurred in this case should be addressed through the State Bar of Arizona disciplinary process, not through the exclusion of the Robinson affidavit. The Court is influenced in this decision by the purpose of the Arizona Rules of Professional Conduct:

> The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of a Rule.

Arizona Supreme Court Rule 42, Preamble to Rules of Professional Conduct.

**IT IS ORDERED:**

1.      Defendants' motion to for summary judgment on the Title VII claim (Dkt. #47) is **granted** with respect to all individual Defendants and **denied** with respect to Defendant Maricopa Community College District.

2.      Defendants' motion for summary judgment on the section 1981 and section 1983 claims (Dkt. #47) is **granted** with respect to Defendants Clevenger and Peterson and **denied** with respect to all other Defendants.

3.      The Court will set a final pretrial conference by separate order.

DATED this 12th day of February, 2009.

_David G. Campbell_

David G. Campbell
United States District Judge